262 S.W.2d 340 (1953)
MURPHY
v.
WESTERN & SOUTHERN LIFE INS. CO.
No. 28684.
St. Louis Court of Appeals. Missouri.
November 17, 1953.
Leonard A. Siebels, William L. Mason, Jr., Koenig, Dietz & Mason, St. Louis, for appellant.
*341 Fordyce, Mayne, Hartman, Renard & Stribling, and Thomas Rowe Schwarz, St. Louis, for respondent.
ANDERSON, Judge.
This is an action brought by plaintiff, as administrator of the estate of James E. Murphy, deceased, against defendant, Western and Southern Life Insurance Company, to recover an accidental death benefit under a policy of life insurance issued by defendant to the said James E. Murphy. The trial below resulted in a directed verdict in favor of defendant. From the judgment on said verdict plaintiff has appealed.
The policy was issued February 15, 1943, and by its terms insured the life of said James E. Murphy in the sum of $500, and provided for the payment of a like amount if insured's death should result from bodily injuries caused directly, exclusively, and independently of all other causes from external, violent and purely accidental means.
Insured died January 1, 1950. Thereafter, defendant paid the ordinary death benefit provided for in said policy to William Murphy, a brother of insured. Said payment was made under a facility of payment clause contained in said policy. Thereafter, plaintiff made claim to the accidental death benefit, which claim was rejected by defendant on the ground that insured's death did not result from bodily injuries caused by accidental means.
Insured's death was the result of his taking an excessive amount of paraldehyde which had been prescribed by his physician, Dr. Nicholas S. Vitale.
Dr. Vitale testified that insured came to his office on December 29, 1949. Insured had been drinking and was very nervous. On said date Dr. Vitale prescribed elixir bromide with chloral hydrate. The next day, December 30, 1949, insured again appeared at Dr. Vitale's office, stating that he "wasn't doing so well on that." Thereupon the doctor prescribed paraldehyde, the prescription specifying "a tablespoon every three hours". Dr. Vitale stated that he prescribed paraldehyde for the purpose of sobering the insured and to quiet his nerves.
Insured lived in a rooming house operated by Mary Walsh. Mary Walsh testified that the last time she saw insured alive was on New Year's Eve, between four and five o'clock in the afternoon. She stated:
"I went in to clean his room and I found it very upset, the bed wasn't in a very nice condition and * * * I started out and as I did he came in, and as I looked at him I knew he had been drinking, but he wasn't drunk, he was getting over a drunk, and he was nervous and he was talking and telling me a lot of stuff, and of course I told him what I thought about the condition of the place and everything, and he said, `Well, I am going to sober up, Miss Walsh, and * * * to show you I am * * * I am not going out tonight. Will you get me a pitcher of water, of ice water, and leave it here and get me a paper?' * * * and I said, `Yes.' So I got him the pitcher of water and I walked in and put it on his * * * tableand I showed him about the floor lamp. I said, `Now when you get up * * * pull this chain and your light will go on. * * * I am going to have company tonight and I don't want to be disturbed.' He said, `All right.' And I said, `Don't leave this room,' because * * * I just took him under my wing; you know, he was a fellow that just needed guidance, that's all. * * * His bed was all messed up and I don't know what was on the bed, I haven't any idea, I didn't even look. His room smelled so bad I wanted to get out of there. * * * there was an odor of alcohol there, and I wouldn't know what else. * * * I had seen him getting over drunks. * * * He would just go out and get drinking and come back and lay down, so when he took a notion to sober up he would lay down and sober up and that was it. * * * I told him he had to move, you know, if he didn't quit his drinking. He said, `Well, you will never have to *342 have me move because', he said, `I am going to work Monday,' and he had his clothes and everything laid out to go to work * * *. He told me he was going to be married when he got his first pay, even asked me to fix a room for him and his wife. He was very happy. He was a happy-go-lucky guy, he just didn't care for anything.
* * *
* * *
"Q. When did you last see him, that is after seeing him on New Year's Eve? A. New Year's Day, I'll say it was around four o'clock. It may not have been right at four o'clock, but it was between three and four.
"Q. Where did you see him? A. On his floor, at the door. * * * He had his pajamas on. It looked to me like he might have been trying to go to the bathroom. * * * I had another man there, because I didn't want to go in the room. * * * I knew he was drinking and I didn't care to go in the room where there was a drunken man, and I asked this man to open the door."
The parties entered into the following stipulation, which was introduced at the trial.
"Stipulation.
"It is hereby stipulated and agreed by and between the parties to this action and at the trial thereof that the following statements are true:
"1. The defendant issued the policy sued on and described in the petition.
"2. All of the provisions of said policy were in full force and effect at the time of death of the insured.
"3. The representative of the insured after the death of the insured complied with all of the conditions of the policy prerequisite to bringing an action on said policy.
"4. The plaintiff in this cause is the proper party plaintiff and the insured described in the policy is the same person on whose estate plaintiff is administering.
"5. Prior to his death a duly licensed physician had prescribed a dosage of a medicine containing paraldehyde for the insured to take. This prescription was properly compounded and filled for insured by a duly licensed pharmacist. Insured took this medicine for some time prior to his death.
"6. On or about January 1, 1950, insured took an excessive amount of this medicine. He died on January 1, 1950, as a direct result of taking said excessive amount."
Appellant assigns as error the action of the trial court in directing a verdict for defendant. Two propositions are advanced in support of this contention. It is first urged that the taking of an excessive amount of paraldehyde was an unusual act or event and therefore accidental and, such being the case, insured's death was caused by accidental means within the meaning of that term as used in the policy. Secondly, it is urged that the necessary element of death by accidental means is supplied by the presumption against suicide.
An accident, in common parlance, and as defined in Webster's New International Dictionary, Second Edition, is:
"1. a. An event that takes place without one's foresight or expectation; and undesigned, sudden, and unexpected event, b. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by an accident."
Under the above definition, which merely requires the element of unexpectedness, a result may be accidental (although it proceeded from an intentional act) under the terms of a policy insuring against accidental death, if one can say that the result was an unusual or unexpected consequence of such intentional conduct. However, when we consider a policy which requires as a prerequisite to liability that the injury or death must be caused by "accidental means", a new element of unexpectedness is introduced. In such a case *343 we no longer look to the result, viz., the injury or death, in determining whether the loss is covered, but must look to the means. Caldwell v. Travelers Insurance Co., 305 Mo. 619, 267 S.W. 907, 39 A.L.R. 56. The policy in such a case provides a restricted form of insurance, rather than straight accident insurance, and requires that there be an element of unexpectedness in the means which produces the result. In such cases the application of the external force which causes the injury or death may be either intentional or unintentional; and, if intentional, it may be either with or without the insured's consent.
In the case of intentional force applied by the insured, or by another with the insured's consent, there are further questions to be considered, namely, whether there appears the existence of mishap in the process, or ignorance of a material fact surrounding the application of the force. These two questions are presented in the case at bar.
From the facts submitted, it is clear that the insured intentionally drank the paraldehyde which the doctor prescribed for him. But, whether there was any slip or mishap in the process, or ignorance of a material fact surrounding the application of the force, does not appear. If it had been shown that when insured was in the act of drinking from the bottle of paraldehyde, intending to take the dose prescribed, his foot slipped causing him to gulp down an excessive amount, the requirement of accidental means would have been satisfied; or, being in an intoxicated condition, he swallowed an excessive amount, thinking he was drinking whiskey from his whiskey bottle, his ignorance of such material fact would have supplied the necessary element of unexpectedness to make the means accidental.
It is urged that insured's ignorance of the effect of taking an amount of paraldehyde in excess of the amount prescribed supplied the element of unexpectedness, which made the means accidental. Such a theory cannot be successfully maintained.
If the result, although unexpected, flows directly from an act in which the insured voluntarily engages, there cannot be said to be unexpectedness with reference to the application of the external force which produced the injury or death. Carnes v. Iowa Traveling Men's Association, 106 Iowa 281, 76 N.W. 683; Mehaffey v. Provident Life & Accident Ins. Co., 205 N.C. 701, 172 S.E. 331; Naggy v. Provident Life & Accident Ins. Co., 218 Iowa 694, 255 N.W. 526; Calkins v. National Travelers' Ben. Ass'n of Des Moines, 200 Iowa 60, 204 N.W. 406, 41 A.L.R. 363.
In poison cases, where the poison is mistaken for a harmless substance, there is lack of knowledge of, and intent to take, poison. There is thus unexpectedness with reference to the means. But in the instant case the insured knew he was taking paraldehyde, and the only thing unexpected was the result.
The case at bar is analogous to the strain cases where a too heavy weight is lifted and a rupture is sustained. There one does what he intends to do but an unexpected result follows, which is not an accident within the terms of a policy insuring against injury caused through accidental means.
Nor can we say that there is a presumption that insured's death resulted from accidental means rather than nonaccidental means. It is true that there is a presumption against suicide, but after giving full effect to this presumption there still remains two possible hypotheses in this case to account for insured's death, namely, accident with respect to the means, and misjudgment as to the effect of the amount of paraldehyde intentionally taken. The burden of proof was upon plaintiff to establish the former. This he has not done. And, a jury will not be permitted to speculate as to which of two equally plausible explanations of the cause of insured's death is correct.
The trial court did not err in directing a verdict in this case. The judgment appealed from is affirmed.
BENNICK, P. J., and LAWRENCE HOLMAN, Special Judge, concur.