**INDEPENDENT PETROCHEMICAL CORPORATION, et al.,**
**Plaintiffs,**

v.

**AETNA CASUALTY AND SURETY COMPANY, et al., Defendants.**

**Civ. A. No. 83–3347.**

United States District Court, District of Columbia.

Dec. 6, 1991.

Alan G. Miller, Hunter O'Hanian, Morrison, Mahoney & Miller, Boston, Mass., Randell Hunt Norton, Thompson, Larson, McGrail, O'Donnell & Harding, Washington, D.C., for U.S. Fire Ins. Co.

Dennis M. Flannery, John M. Read, Wilmer, Cutler & Pickering, Washington, D.C., for Ins. Co. of North America.

John H. Gross, Lia B. Royle, Anderson, Kill, Olick & Oshinsky, New York City, Jerold Oshinsky, Sherry W. Gilbert, Robert H. Shulman, and Karen L. Bush, Anderson, Kill, Olick & Oshinsky, Washington, D.C., Tim E. Sleeth, Smith, Hulsey & Busey, Jacksonville, Fla., for plaintiffs Independent Petrochemical Corp., The Charter Co., Charter Oil Co.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the Court on defendant U.S. Fire Insurance Company's ("U.S. Fire") renewed motion for summary judgment and defendant Insurance Company of North America's ("INA") motion for summary judgment. For the following reasons, the Court will grant defendants' motions.

### I.

This diversity case was brought in 1983 by plaintiffs Independent Petrochemical Corporation ("IPC") and its affiliated corporations (collectively "plaintiffs"). The underlying facts are quite complex, and will be recounted here only insofar as is needed to decide the question before the Court. A fuller discussion may be found in this Court's previous decision. *See Independent Petrochemical Corp. v. Aetna*

*Casualty & Surety Co.,* 654 F.Supp. 1334 (D.D.C.1986).

In 1971, IPC arranged for Russell Bliss, an independent contractor, to dispose of certain waste materials for its customer Northeastern Pharmaceutical and Chemical Company ("NEPACCO"). The waste materials contained dioxin, a family of chemical compounds that, in sufficient concentrations, may cause serious harm to humans, animals, and plants.[1] Bliss removed over 20,000 gallons of the hazardous waste in his tank trucks to a facility in Frontenac, Missouri, where he mixed it with waste oil and emptied the resulting mixture into storage tanks. Bliss later sprayed the mixture as a dust suppressant at a number of sites in Missouri.

As the toxic effects of the dioxin allegedly became apparent, a number of claims were brought against plaintiffs as well as Bliss. Eventually, fifty-seven civil actions involving more than 1,600 claimants have been filed in other courts against plaintiffs, in addition to class actions and suits by the State of Missouri and the United States. Most of the claims allege bodily injury and property damage from exposure to the contaminated spray material. The individual claimants seek in aggregate $4 billion in bodily injuries and property damage, as well as $4 billion in punitive damages.

Between 1971, when IPC agreed to assist NEPACCO in disposing of the hazardous waste material, and 1983, when this case commenced, IPC purchased 67 primary and excess liability insurance policies from the 23 insurers named as defendants in this action. In November 1983, plaintiffs filed suit seeking a declaratory judgment that these primary and excess insurers are obligated to defend and indemnify plaintiffs for all settlements and judgments, if any, in the dioxin-related claims arising out of the spraying of the hazardous waste material.

U.S. Fire and INA were among the defendant insurance carriers who issued excess liability insurance policies to plaintiffs. U.S. Fire issued four excess liability insurance policies to plaintiffs, two of which covered the periods dating from January 1, 1981 through January 1, 1982, and two of which covered the periods dating from January 1, 1982 through October 1, 1983. INA issued two excess liability insurance policies to plaintiffs, one of which covered the period dating from January 1, 1981 through January 1, 1982, and the other of which covered the period dating from January 1, 1982 through October 1, 1983. Each of the foregoing policies followed form to or incorporated Certificates No. CHAF 811 and No. CHAF 821—known as "First Casualty Excess Policies"—issued by Corporate Insurance and Reinsurance Company, Ltd. ("CIRCL"). The CIRCL policies contain a choice of law provision which designates New York law as governing the interpretation of the contract language. In addition, the CIRCL policies contain pollution exclusion clauses. In pertinent part, these clauses state:

> This policy shall not apply:
>
>     \*    \*    \*    \*    \*    \*
>
> to liability arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

A number of other primary and excess liability insurance policies issued to plaintiffs contained identical pollution exclusion clauses. *See generally* E. Joshua Rosenkranz, Note, *The Pollution Exclusion Clause Through the Looking Glass,* 74 Geo. L.J. 501 (1986).

Several defendants moved for summary judgment on the ground that they had no duty to defend or indemnify plaintiffs based on the pollution exclusions contained in their policies. On September 7, 1988, the Court rejected these motions for summary judgment. *See IPC v. Aetna,* No. 83–3447,

---

**1.** The name "dioxin" refers to the basic structure—two oxygen atoms joining a pair of benzene rings—of an entire family of chemical compounds. *See id.* at 1339 n. 1.

slip op. at 167–91 (D.D.C. Sept. 7, 1988). In regards to those policies which designated New York law as controlling,[2] the Court determined, relying on *Allstate Insurance Co. v. Klock Oil Co.*, 73 A.D.2d 486, 426 N.Y.S.2d 603 (1980) (*"Klock Oil"*), that whether a discharge of pollutants into the environment is "sudden, unintended, and unexpected"—in other words, sudden and accidental—can be determined only by reviewing the surrounding circumstances "from the point of view of the plaintiffs." *IPC v. Aetna*, No. 83–3447, slip op. at 190–91.

On December 23, 1988, U.S. Fire moved for summary judgment based on the pollution exclusion clauses in their excess liability insurance policies. U.S. Fire argued that two intermediate New York court cases, *Technicon Electronics Corp. v. American Home Assurance Co.*, 141 A.D.2d 124, 533 N.Y.S.2d 91 (2d Dept.1988), and *Powers Chemco, Inc. v. Federal Insurance Co.*, 144 A.D.2d 445, 533 N.Y.S.2d 1010 (2d Dept.1988), merited reconsideration of the Court's September 7, 1988 Order because they had served to overrule *Klock Oil.* On May 28, 1989, the Court denied this motion, but noted that it would reconsider its ruling if the New York Court of Appeals overturned *Klock Oil.*

U.S. Fire now renews its motion for summary judgment in light of two recent decisions by the New York Court of Appeals: *Technicon Electronics Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989) (*"Technicon"*), and *Powers Chemco, Inc. v. Federal Insurance Co.*, 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989) (*"Powers Chemco"*). INA moves for summary judgment on the same basis. Plaintiffs oppose the motions.

## II.

Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part:

The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment then, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating the absence of any genuine issue of material fact to be determined, and the court must credit the non-movant's evidence and draw all justifiable inferences in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513.

## III.

U.S. Fire now renews its motion for summary judgment and INA moves for summary judgment based on the pollution exclusions contained in the excess liability insurance policies issued to plaintiffs. U.S. Fire and INA contend that under the New York Court of Appeals' recent decisions in *Technicon* and *Powers Chemco*, in which the New York Court of Appeals unanimously determined that a pollution exclusion clause which contains an exception for "sudden and accidental" discharges—such as the clauses at issue here—precludes coverage for all damages resulting from intentional discharges of waste into the environment, *Technicon*, 74 N.Y.2d at 74–75, 544 N.Y.S.2d at 533–34, 542 N.E.2d at 1050–51; *Powers Chemco*, 74 N.Y.2d 910, 911, 549 N.Y.S.2d 650, 651, 548 N.E.2d 1301, 1302, they have no duty to defend or indemnify plaintiffs as a matter of law based on the pollution exclusion.

**2.** This Court determined in its Order of September 7, 1988 that the policies which designate a particular state's law as controlling would be given effect unless that state's law was in fundamental conflict with the law of Missouri.

## A.

In *Technicon,* the New York Court of Appeals affirmed a lower court ruling that the plain terms of a pollution exclusion clause precluded insurance coverage where a manufacturer had been guilty of intentional, long-term discharges of toxic chemicals. The *Technicon* court held that the pollution exclusion clause "by its own terms ... does not distinguish between intended or unintended consequences of intentional discharges; rather it excludes from coverage liability based on all *intentional* discharges of waste whether consequential damages were intended or unintended." *Technicon,* 74 N.Y.2d at 75, 544 N.Y.S.2d at 533–34, 542 N.E.2d at 1050. Because the plaintiffs in the underlying action had alleged that the manufacturer had intentionally discharged wastes into the environment, the New York Court of Appeals concluded that the discharge could not be considered "accidental." The Court of Appeals thus rejected the manufacturer's argument that its discharge of toxic waste was "accidental" because it did not intend to cause environmental harm or the specific injuries alleged in the underlying suits against it.

The *Technicon* court also distinguished, but did not overrule, *Klock Oil,* the case upon which this Court relied in its previous orders of September 7, 1988 and May 28, 1989 denying motions for summary judgment based on the pollution exclusion. The *Technicon* court held that *Klock Oil* was inapposite because the underlying complaint in that case had alleged *unintentional* accidental discharges, while in *Technicon,* the underlying complaint had alleged the *deliberate* and *intentional* discharge of toxic wastes.

In *Powers Chemco,* the New York Court of Appeals reaffirmed *Technicon.* The *Powers Chemco* court held that the leaching of hazardous wastes could not be considered "accidental" because it was the result of deliberate and purposeful conduct, and further stated that "[a]s we noted in *Technicon,* the exclusion clause is 'unambiguously plain and operative,' and represents only a single discrete exception to the insurer's obligation to indemnify under the policy." *Powers Chemco,* 74 N.Y.2d 910, 911, 549 N.Y.S.2d 650, 651, 548 N.E.2d 1301, 1302 (1989) (quoting *Technicon,* 74 N.Y.2d at 71, 544 N.Y.S.2d at 532, 542 N.E.2d at 1048). In addition, the New York Court of Appeals in *Powers Chemco* rejected the plaintiff's contention there that since it was not the actual polluter, but merely inherited the problem from the former landowner, the pollution exclusion could not serve to bar its insurance claim. The Court of Appeals determined that "there is nothing in the language of the pollution exclusion clause to suggest that it is not applicable when liability is premised on the conduct of someone other than the insured." *Id.*

## B.

■ U.S. Fire and INA contend that under *Technicon* and *Powers Chemco,* the pollution exclusion clauses contained in the policies at issue here preclude coverage because plaintiffs are potentially liable for damages resulting from Russell Bliss's intentional and deliberate discharge of hazardous waste materials into the environment. Put in simpler terms, U.S. Fire and INA maintain that it is impossible for the discharges of hazardous waste materials by Russell Bliss to be considered "accidental" as set forth in the exclusion clauses at issue because it is undisputed that Bliss deliberately discharged the waste materials into the environment.

Plaintiffs respond that *Technicon* and *Powers Chemco* are inapposite. Plaintiffs contend these cases only exclude from coverage discharges and dispersals of toxic or hazardous waste where the alleged polluter intentionally and deliberately discharged a *known* pollutant. Here, plaintiffs maintain a genuine issues of material fact remain as to whether Bliss knew that the waste oil he was spreading contained a measurable amount of dioxin and whether he knew if the dioxin was hazardous. Plaintiffs also claim that where, as here, the policyholder's potential liability arises from the acts of a third party, the policyholder's intent is not irrelevant to a determination of whether the dispersal or discharge of toxic or

hazardous materials was sudden or accidental. Finally, plaintiffs argue that a genuine issue of material fact remains as to whether the dioxin sprayed by Bliss caused the alleged injuries complained of in the underlying claims.

The Court finds no merit in plaintiffs' contentions. The Court finds that, as was the case in *Technicon*, the pollution exclusion clauses at issue here are "unambiguously plain and operative," *Technicon*, 74 N.Y.2d at 71, 544 N.Y.S.2d at 532, 542 N.E.2d at 1048, and serve to relieve U.S. Fire and INA from any obligation to defend or indemnify plaintiffs in connection with the dioxin-related claims brought against them in the underlying actions.

### C.

■ In *Technicon*, the New York Court of Appeals dictated that in resolving the question presently before the Court, the first inquiry to consider is whether the pollution exclusion is applicable at all. To be so, "the complaint with respect to which coverage is sought must allege a discharge, dispersal, release or escape of a toxic or hazardous waste which has actually resulted in pollution. If so, the damage from the discharge of the hazardous waste is excluded from coverage by the express exclusion clause...." *Id.* at 74, 544 N.Y.S.2d at 533, 542 N.E.2d at 1050.

Plaintiffs contend that U.S. Fire and INA have not met this test because they have failed to show a discharge of a toxic or hazardous waste which has actually resulted in pollution. Plaintiffs assert that there is a significant question as to whether dioxin is in fact a pollutant, noting that several individuals, including Dr. Vernon Hauk, have recently called this proposition into question. Plaintiffs therefore argue that a genuine issue of material fact remains as to whether the dioxin discharged by Bliss constitutes a toxic or hazardous waste and whether it actually resulted in the pollution complained of in the underlying claims.

■ The Court rejects these contentions. The Court finds that the initial test set forth in *Technicon* has been satisfied here. The underlying complaints clearly allege that during the early 1970s, Bliss intentionally and deliberately discharged or dispersed dioxin onto several sites in eastern Missouri and that such discharges or dispersals resulted in pollution to the environment. Moreover, the initial inquiry into whether the pollution exclusion is applicable at all does not depend on a finding of whether the toxic or hazardous waste *in fact* has actually resulted in pollution. Rather, as the *Technicon* court noted, this inquiry asks whether the complaint with respect to which coverage is sought *alleges* a discharge or dispersal of a toxic or hazardous waste which has actually resulted in pollution. This is because, as the *Technicon* court set forth, "[t]he duty to defend insureds—long recognized as broader than that to indemnify—is derived from the allegations of the complaint and the terms of the policy." *Id.* at 73, 544 N.Y.S.2d at 533, 542 N.E.2d at 1050 (internal quotation omitted). Of course, if there is no duty to defend, there is no duty to indemnify. This Court therefore need only look to allegations of the underlying complaints in order to determine whether the pollution exclusion is applicable. This rule dovetails nicely with common sense because the question of whether the discharge of the dioxin-tainted waste oil mixture *actually* resulted in the injuries alleged in these complaints is simply not material to the determination of whether the pollution exclusion is applicable here. If, when the underlying complaints go to trial, it is determined by the finder of fact that the discharge of the waste materials by Bliss did not result in the injuries complained of, plaintiffs would not be held liable for these injuries and U.S. Fire and INA would not be required to indemnify plaintiffs in any event. Hence, it is proper for the Court to look to the allegations of the underlying complaint and presume them to be true in order to decide whether, if plaintiffs are found liable on the underlying claims, U.S. Fire and INA are relieved of their duty to indemnify plaintiffs under the pollution exclusion.

■ Plaintiffs' secondary contention that a genuine issue of material fact exists as to whether the dioxin discharged by Bliss con-

stitutes a toxic or hazardous waste similarly must fail. The Court has previously determined that "Bliss' spraying of dioxin-tainted waste oil surely constitutes pollution and contamination within the common meaning of those terms." *IPC v. Aetna,* No. 83–3447, slip op. at 173. Plaintiffs point to nothing in the record that would controvert this finding. Plaintiffs' citations to a number of news items which discuss scientists' continuing questions concerning the hazards of dioxin do not call the Court's previous finding into question. While dioxin may not now be considered as hazardous as it once was, none of the news items cited indicate that dioxin is no longer considered to be a pollutant or that it is a benign chemical compound.

The Court therefore finds that the pollution exclusion clauses in the policies at issue are applicable and operative.

### D.

■ Having so established, the next inquiry for the Court to consider is whether the sudden and accidental exception at the tail of the exclusion provision "saves the coverage by neutralizing the exclusion clause." *Technicon,* 74 N.Y.2d at 74, 544 N.Y.S.2d at 533, 542 N.E.2d at 1050. "Since the exception is expressed in the conjunctive, both requirements must be met for the exception to become operative. Stated conversely, discharges that are either nonsudden or nonaccidental block the exception from nullifying the pollution exclusion." *Id.* at 75, 544 N.Y.S.2d at 533, 542 N.E.2d at 1050.

U.S. Fire and INA contend that because the discharge of hazardous waste materials by Bliss was deliberate, such discharges cannot be considered accidental under the operative pollution exclusion clauses. Noting that in *Technicon,* the New York Court of Appeals rejected the argument that an intentional discharge of toxic or hazardous materials into the environment can be considered accidental if the policyholder did not intend to cause environmental harm, U.S. Fire and INA insist it is irrelevant whether or not Bliss was aware of the chemical composition of the waste he

sprayed and understood that environmental damage could result from the spraying.

Plaintiffs dispute this analysis. Plaintiffs argue that for a discharge or dispersal of toxic or hazardous materials to be deemed intentional, the policyholder must have knowledge that it is discharging a *known* pollutant. Here, because Bliss allegedly tasted the dioxin-tainted waste oil mixture and spread the mixture on his own field, plaintiffs claim genuine issues of material fact remain as to whether Bliss knew that the waste oil he was spraying contained a measurable amount of dioxin and whether he knew that the dioxin was hazardous. In addition, plaintiffs point out that as of 1991, the United States Environmental Protection Agency still permits waste oil to be sprayed as a dust suppressant. Plaintiffs thus maintain that genuine issues of material fact remain as to Bliss' state of mind at the time of the discharges.

Based on its own review of *Technicon* and *Powers Chemco,* the Court agrees with the position of U.S. Fire and INA. The New York Court of Appeals in *Technicon* nowhere linked a determination of whether a discharge of toxic or hazardous materials was accidental to the discharger's specific knowledge of the toxicity or hazards of the materials. Rather, the *Technicon* court focused exclusively on the deliberateness of the discharge—in other words, the discharger's knowledge that it was dispersing the toxic or hazardous materials. In pertinent part, the New York Court of Appeals held that "[i]nasmuch as the underlying complaint alleges and Technicon's answer concedes that its dumping of wastes was deliberate, the occurrence cannot be 'accidental' within the meaning of the policy.... [T]he pollution exclusion clause at issue here is directed at the polluting act itself—the discharge, dispersal or escape." *Id.* at 75–76, 544 N.Y.S.2d at 534, 542 N.E.2d at 1051; *see also New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1427 (2d Cir.1991) ("Where the underlying complaint unequivocally alleges that the discharge of pollutants was intentional and deliberate, an insured may not claim the benefit of the sudden and accidental exclusion." (relying on *Techni-*

*con* )). Here, the record is clear that Bliss was cognizant of the presence of the dioxin-tainted NEPACCO waste in the waste oil mixture which he sprayed at the several sites. The record reveals that Bliss removed over 20,000 gallons of the NEPACCO waste in his tank trucks, mixed it with waste oil and emptied the resulting mixture into storage tanks, and sprayed the mixture as a dust suppressant at a number of sites in Missouri.[3] Plaintiffs' contentions would turn the *Technicon* court's inquiry on its head, asking not whether there had been a *knowing* discharge of toxic or hazardous wastes, but whether there had been a discharge of *known* toxic or hazardous wastes. Plaintiffs' assertions—that Bliss did not know that the dioxin was toxic or hazardous and that he did not believe the waste oil mixture contained a measurable amount of dioxin—therefore do not implicate the deliberateness of the discharge. Indeed, by focusing on the discharger's knowledge of the toxicity or hazards of the dispersed materials, plaintiffs' argument inexorably goes to the issue of whether Bliss, the discharger, in any way intended for damages to result from his spraying, an analysis which was specifically rejected by the *Technicon* court, which stated that "the pollution exclusion clause, by its own terms, does not distinguish between intended or unintended consequences of intentional discharges; rather it excludes from coverage liability based on all *intentional* discharges of waste whether consequential damages were intended or unintended." *Technicon,* 74 N.Y.2d at 75, 544 N.Y.S.2d at 533–34, 542 N.E.2d at 1050. The Court thus rejects plaintiffs' contention that Bliss' alleged lack of knowledge of the toxicity or hazards of dioxin and alleged belief that the waste oil mixture did not contain a measurable amount of dioxin indicates that his discharge of these materials was not intentional or deliberate.

Plaintiffs contend, however, that under a reasonable policyholder's construction of the pollution exclusion clause, whether a discharge of pollutants was accidental would depend on what the policyholder knew at the time of the alleged discharge. Under this analysis, plaintiffs argue that even if Bliss' discharge of the hazardous waste materials was intentional and deliberate, the discharge still can be considered accidental as to plaintiffs because plaintiffs did not expect or intend for Bliss to use the waste materials for spraying, nor did they expect or intend for any resulting harm to have occurred. Plaintiffs point out that IPC, the policyholder here, did not generate NEPACCO's waste oil, that IPC only intended to act as an intermediary between NEPACCO and Bliss by arranging for Bliss to transfer NEPACCO's waste oil to a disposal site, and that IPC had no knowledge that Bliss would fail to complete the transaction agreed to, and instead spray a portion of the NEPACCO waste oil as a dust suppressant. Plaintiffs conclude that the discharge of hazardous materials by Bliss was accidental as to plaintiffs.

The Court rejects this argument as well. In *Powers Chemco,* the New York Court of Appeals rejected a similar argument, stating that "[s]imply put, there is nothing in the language of the pollution exclusion clause to suggest that it is not applicable when liability is premised on the conduct of someone other than the insured.... [the exclusion clause] represents only a single discrete exception to the insurer's obligation to indemnify under the policy." *Powers Chemco,* 74 N.Y.2d at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at 1302. Consistent with its decision in *Technicon,* the New York Court of Appeals in *Powers Chemco* thus focused on the accidental nature of the discharge of hazardous waste itself, rather than the intent of the insured.[4]

---

**3.** Response in Opposition to Defendants' Aetna Casualty & Surety Co., Insurance Company of North America and U.S. Fire Insurance Company Joint Statement of Material Facts as to Which There is No Genuine Issue Pursuant to Rule 108(h) (filed July 31, 1987), at Response 16; Response of Plaintiffs to Statement of Defendant U.S. Fire Insurance Company of Material Facts as to Which There is No Genuine Issue, ¶ 9, at 5.

**4.** Subsequent decisions by New York courts have uniformly followed this principle. *See, e.g., Rochester Shelting & Refining Co. v. Mer-*

**18**

The Court concludes that because Bliss' discharge of the dioxin-tainted NEPACCO waste materials into the environment were intentional and deliberate, such discharges cannot be considered accidental under the pollution exclusion clauses contained in U.S. Fire and INA's excess liability insurance policies. Accordingly, the Court finds that U.S. Fire and INA have no duty to defend or indemnify plaintiffs under New York law based on the pollution exclusion clauses contained in the policies at issue.

### IV.

■ Finally, plaintiffs contend that even if U.S. Fire and INA's reading of *Technicon* and *Powers Chemco* is accepted by the Court, the motions for summary judgment still must be denied because New York law would then be in conflict with a fundamental policy of Missouri law. Noting that this Court had previously determined in its Order of September 7, 1988 that the policies which designate a particular state's law as controlling would be given effect unless that state's law was in conflict with a fundamental policy of the law of Missouri, plaintiffs argue that two decisions which have construed Missouri law, *United States v. Conservation Chemical Co.*, 653 F.Supp. 152 (W.D.Mo.1986), and *Aetna Casualty & Surety Co. v. General Dynamics Corp.*, No. 88–2220C(A) (E.D.Mo. Jan. 23, 1991), *appeal pending*, demonstrate that such a conflict between the law of New York and a fundamental policy of Missouri would arise.

Comment g of the Restatement (Second) of Conflict of Laws provides that a "fundamental policy" of state law is a policy that "must ... be a substantial one." Restatement (Second) of Conflict of Laws § 187 comment g (rev. ed. 1989). Comment g goes on to state that "a policy of this sort will rarely be found in ... general rules of

contract law," but instead "may be embodied in a statute which makes one or more kinds of contracts illegal...." *Id.* Under this framework, the Court finds no fundamental policy of Missouri law that is in conflict with the law of New York as set forth in *Technicon* and *Powers Chemco*. The Missouri Supreme Court has not spoken on the issue. Nor do plaintiffs point the Court to a single Missouri statute or decision by a Missouri court which establishes a fundamental policy on the pollution exclusion that is in conflict with the principles set forth in *Technicon* and *Powers Chemco*. Plaintiffs instead rely exclusively on two federal district court decisions, *Conservation Chemical* and *General Dynamics*. After reviewing both cases, the Court finds that neither sets forth a fundamental policy of Missouri law as it relates to the pollution exclusion.

In *Conservation Chemical*, the United States District Court for the Western District of Missouri approved a Special Master's finding that summary judgment was not appropriate for a finding that the pollution exclusion should be applied to exclude coverage as to the policies at issue. *Conservation Chemical*, 653 F.Supp. at 203–04. Notably, however, the court did not cite or rely on a single Missouri statute or decision by a Missouri court in reaching this conclusion. In contrast, the United States District Court for the Eastern District of Missouri in *General Dynamics* purported to rely on principles of Missouri law in determining the meaning of the term accidental as being an event that takes place without one's foresight or expectation. *See General Dynamics*, No. 88–2220C(A), slip op. at 17–18 ("[T]he Missouri courts have established that the meaning of the term 'accidental' is an event that takes place without one's foresight or ex-

chants Mutual Insurance Co., No. 91/02683, slip op. at 9 (N.Y.Sup.Ct. Monroe Cty. Sept. 6, 1991) ("[W]hether or not the insured itself discharged the waste is not controlling as to the applicability of the [Pollution] Exclusion...."); *82 Milbur Boulevard, Inc. v. Great Atlantic Insurance Co.*, No. 15132/87, slip op. at 7–8 (N.Y.Sup.Ct. Nassau Cty. Aug. 1, 1990) (pollution exclusion barred coverage because discharge of waste was

not accidental even though the policyholder's tenant, not the policyholder, intentionally discharged the waste); *County of Niagara v. Fireman's Fund Insurance Co.*, No. 71134, slip op. at 3–4 (N.Y.Sup.Ct. Niagara Cty. Mar. 14, 1990) (pollution exclusion barred coverage to policyholder when liability premised on deliberate discharges of waste by third party even if motive of third party was to prevent pollution).

pectation and is not bounded to an event which occurs suddenly."). However, the cases cited by the *General Dynamics* in support of this proposition, *Murphy v. Western & Southern Life Insurance Co.,* 262 S.W.2d 340 (Mo.Ct.App.1953), and *St. Paul Fire & Marine Insurance Co. v. Northern Grain Co.,* 365 F.2d 361 (8th Cir.1966), do not withstand scrutiny. *Murphy* involved an intermediate Missouri court's interpretation of the term accidental as it was used in a life insurance policy. In reaching its conclusion, the *Murphy* court relied exclusively on a dictionary definition of the term; it did not turn to principles of Missouri law or did it cite to decisions of other Missouri courts. *See Murphy,* 262 S.W.2d at 342. Nor did the *Murphy* court in any way indicate that its holding was controlling beyond the limited scope of life insurance. And in *St. Paul Fire,* the United States Court of Appeals for the Eighth Circuit interpreted an insurance policy based on the law of the State of South Dakota, not Missouri. As such, it has no relevance here.

The Court therefore finds no fundamental policy of Missouri law that is in conflict with the law of New York as set forth in *Technicon* and *Powers Chemco.*

## V.

The Court concludes that the pollution exclusion clauses contained in the excess liability insurance policies issued to plaintiffs by U.S. Fire and INA impose no duties or obligations upon U.S. Fire or INA to defend or indemnify plaintiffs with regard to personal injury or property damage claims against plaintiffs allegedly arising out of dioxin contamination at any of the following sites at which it is undisputed that Bliss sprayed the waste oil mixture: Times Beach; Shenandoah; Timberline; Bubbling Springs; Saddle and Spur Club; Rosati/Piazza Road; Frontenac; Quail Run; Castlewood/Sontag Road; Highway 100/Erxleben; East North Street; Lacy Manor; Bliss Farm/Mid–America Arena; Bull Moose Tube Company; Hamill Transfer Company; Jones Truck Lines; Overnite Transport/P.I.E.; Southern Cross Lumber; Arkansas Best Freight; Bonifield Brothers

Trucking; Community Christian Church; Manchester Methodist Church; Baxter Garden Center; Access Road to Old Highway 141; East Texas Motor Freight; and Bristol Steel. The Court further finds that the pollution exclusion clauses at issue impose no duties or obligations upon U.S. Fire or INA to defend or indemnify plaintiffs with regard to personal injury or property damage claims against plaintiffs allegedly arising out of dioxin contamination at either the sites of Minker/Stout/Romaine Creek and Southwestern Bell at which it is undisputed that allegedly contaminated soil was moved from sites sprayed by Bliss. *See EAD Metallurgical, Inc. v. Aetna Casualty & Surety Co.,* 701 F.Supp. 399, 402 (W.D.N.Y.1988) (insured precluded from coverage for damage caused to secondary sites in cases in which waste was intentionally disposed of in the first instance).