Thomas VENEZIA, Plaintiff–Appellant,

v.

Bonds ROBINSON, Jr., Defendant–
Appellee.

No. 93–2448.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 10, 1994.

Decided Feb. 9, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied March 2, 1994.

Amiel Cueto, Christopher Cueto, Cueto, Cueto & Cueto, Belleville, IL, for plaintiff-appellant.

Robert L. Simpkins, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Div., Fairview Heights, IL, Jan E. Hughes, Asst. Atty. Gen., Office of the Atty. Gen., Civ. Appeals Div., Chicago, IL, James M. Hipkiss, Office of the U.S. Atty., Civ. Div., Fairview Heights, IL, for defendant-appellee.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Thomas Venezia, who runs a vending and amusement business, placed three "video poker" machines with V.F.W. Post 4183 on Scott Air Force Base in Illinois. State agents believed that the machines were being used for gambling. Video games that swallow pocket change and "pay off" in replays are unobjectionable; but if they (or the owners of the establishments) pay winners in cash or liquor, then they violate the law of Illinois. Agents of the Illinois Liquor Control Commission began to enforce regulations to the hilt, visiting the place so often that they became as well known as regular customers. The managers did not take the hint. In May 1992 state agents raided the Post and seized the three video poker machines. Venezia supplied four more; in August 1992 all four were seized in a second raid. Between the seizures Bonds Robinson, Jr., one of the agents, sent word to Venezia that he could avoid further interruptions in business by paying graft. Venezia says that he pretended to play along in order to ensnare a dishonest agent. During a two-hour meeting with Robinson, Venezia promised to buy $250 per week in merchandise from Robinson's wife. He did not keep this promise and insists that he never meant to; after the second seizure, Robinson sent a message that Venezia had better keep his word if he wanted to avoid additional trouble.

Instead of paying, Venezia filed a suit against Robinson in state court, asking for an injunction against extortion and other vexation. Robinson received a subpoena requiring him to be in court within 15 minutes; he complied, and at 9:30 A.M. on September 1, 1992, the morning the complaint was filed, Judge James Radcliffe of the circuit court in St. Clair County, Illinois, opened a hearing on Venezia's request for injunctive relief. Robinson had not seen a copy of the complaint, had not been served with process, and was not represented by counsel; he asked for time to obtain a lawyer, and the judge denied this request. (The judge would not even give Robinson a minute to use the telephone.) A reluctant Robinson then testified that he had participated in the raids but denied threatening Venezia. By 10:30 A.M. Venezia had completed his case. Without permitting Robinson to put on a defense—and without setting out findings of fact or conclusions of law—the judge immediately signed a preliminary injunction (not a TRO but an order of indefinite duration) tendered by Venezia's lawyer. The injunction barred Robinson from "threatening or coercing" Venezia and his businesses (although they are not parties to the litigation), from "soliciting bribes or acts of extortion", and from "unlawfully seizing the property" of Venezia and his firms. This parody of legal procedure violated so many rules of Illinois law—not to mention the due process clause of the fourteenth amendment—that it is not worth reciting them.[†]

Represented by the United States Attorney for the Southern District of Illinois, Robinson removed the action to federal court under 28 U.S.C. § 1442(a)(1). This statute permits "[a]ny officer of the United States ... or person acting under him" to remove a suit instituted to challenge "any act under color of such office" when the defendant's action rests on "authority claimed under any

---

† This court routinely sends to the officials responsible for inquiring into the conduct of the bar cases noting apparently inappropriate behavior by lawyers. Similarly, we are sending a copy of this opinion, together with the district court's opinion (which catalogs the extent to which the procedure deviated from Illinois law), to the Judicial Inquiry Board of Illinois.

Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." Robinson is not an "officer of the United States"; he is a supervisory agent of the Illinois Liquor Control Commission. But in an affidavit filed with the removal petition, Robinson stated that he was at all pertinent times acting under the direction of agents of the Federal Bureau of Investigation as part of a criminal investigation, and that during the two-hour meeting with Venezia he had been wearing a tape recorder at the federal agents' request. Two agents of the FBI filed affidavits verifying Robinson's claim. In other words, Robinson was participating in a sting operation, trying to find out whether Venezia would pay bribes to avoid close supervision by state regulators. Venezia depicted himself in the state litigation as an honest businessman trying to fend off a crooked state inspector; a less charitable view would be that after getting wind that the FBI had his bribe offer on tape, Venezia tried to put a better light on things by taking the offensive. (Robinson testified in the state court hearing that the meeting had been taped and that the FBI had a copy; the judge also compelled him to answer questions about who he called first (the FBI) on receiving the subpoena; it is most doubtful that this discovery into an ongoing criminal investigation was proper, or that it would have occurred had Judge Radcliffe permitted Robinson a legal representative.) At all events, the United States Attorney contended that Robinson is a "person acting under" a federal agent, and that the litigation therefore belongs in federal court.

■ The district judge denied Venezia's motion to remand, ruling that the affidavits support removal under § 1442(a)(1). (Venezia waived any contest to the timeliness of removal by omitting that ground from his motion to remand.) Next the district court vacated the injunction, concluding that many procedural flaws in the notice, hearing, and decision, coupled with the vagueness of the injunction itself, see *Schmidt v. Lessard*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), prevent its enforcement. Moreover, the court observed, an injunction against law enforcement activity requires special justification, *Reporters Committee for Freedom of the Press v. AT & T*, 593 F.2d 1030, 1065 (D.C.Cir.1978), which the state judge, who gave no reasons for his order, had not supplied. Finally, the district court dismissed the complaint, because Venezia had not served Robinson with a summons either before or after removal. A subpoena is not a summons, and, the district court concluded, handing the defendant a copy of the complaint in open court (as Venezia's lawyer did on September 1) does not satisfy either state or federal requirements of service. Venezia does not contest this conclusion. A preliminary injunction cannot survive the dismissal of a complaint. *Cypress Barn, Inc. v. Western Electric Co.*, 812 F.2d 1363 (11th Cir. 1987). There remains a dispute, however, about the propriety of the removal.

■ Section 1442(a)(1) does not permit removal on the federal party's say-so; there must be a bona fide federal defense to the claim based on state law. *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). The three affidavits filed in support of removal state that Robinson was participating in a federal investigation and acted under the instructions of federal agents. Removal then poses two issues: (i) were the affiants telling the truth (that is, was Robinson really acting under the FBI's direction when he did the things about which Venezia complains?); (ii) does federal law authorize criminal investigators to violate state laws prohibiting extortion? No matter what the FBI told him to do, Robinson could not blow up Venezia's warehouse or kidnap his daughter just to find Venezia's breaking point. Even the President of the United States may not excuse his subordinates from the demands of the criminal law. *United States v. Ehrlichman*, 546 F.2d 910 (D.C.Cir.1976); *United States v. McCord*, 509 F.2d 334, 343 n. 16 (D.C.Cir.1974); cf. *United States v. United States District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Courts tolerate much conduct by law enforcement agents that would be criminal if committed by private persons—for example, buying and selling cocaine, or offering bribes to public officials—because the agents lack the intent that is an element of the offense. To win the confidence of hoodlums, federal agents some-

**212**

times must speak and act like hoodlums. Cf. *United States v. Murphy,* 768 F.2d 1518, 1528–29 (7th Cir.1985).

How far this principle extends is an unsettled issue. Could the FBI have sent a team of goons to smash some video poker machines and threaten future thuggery unless Venezia paid bribes, defending its acts with the theory that if Venezia turned out to be an honest entrepreneur he could recover for his loss by bringing a suit under the Tucker Act? These are complex issues, but the propriety of removal does not depend on the answers. Once the federal defendant has a plausible federal defense, removal is appropriate so that the federal court may determine whether the defense succeeds. A federal defendant need not show that he is entitled to *prevail* in order to have access to the federal forum. *Mesa,* 489 U.S. at 133, 109 S.Ct. at 967; *Willingham v. Morgan,* 395 U.S. 402, 406–07, 89 S.Ct. 1813, 1815–16, 23 L.Ed.2d 396 (1969). What is more, the state court did not impose a penalty on an isolated bad act; it put the kibosh on an ongoing investigation. A federal agent or informant who asserts that he was (or is) acting in the course of a criminal investigation is entitled to remove under § 1442(a)(1), presenting to the federal tribunal all questions of justification and immunity—both of liability for yesterday's acts and of entitlement to take similar steps tomorrow.

Assuredly, however, the removing party must establish that he *is* a federal official or is "acting under" such an official. Venezia served interrogatories and requests for production, seeking to pierce the affidavits. Some of the demands were bizarre. Request 1, for example, reads: "Produce any and all video-tapes which purport to show Thomas Venezia and/or Bill Clinton and/or Congressman Jerry Costello." None of the affidavits or other documents in the case suggests that President Clinton or Representative Costello had any dealings with Venezia or any evidence pertinent to this affair, or indeed that video recordings played a role in the investigation. (The affidavits mention audio tapes of the Venezia–Robinson meeting.) But the United States Attorney declined to produce any documents or answer any interrogatories, and Venezia contends that the district court's failure to enforce his demands for discovery spoils the decision concerning removal. How could he contest the affidavits, Venezia asks, without discovery? Perhaps he could not. Interrogatories and requests to produce are authorized, however, only after the defendant has been served with process. Fed.R.Civ.P. 33(a), 34(b). Venezia simply ignores the district court's conclusion that Robinson remains unserved—a conclusion that forecloses every avenue of attacking this judgment. The district court was entitled to accept the affidavits at face value, which means that Robinson was entitled to decision in a federal forum.

AFFIRMED.