Tremblay et al v. Philip Morris        CV-02-192-B    11/08/02  P

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Denise Tremblay and</u>
<u>Karen Lawrence, et al.</u>

    **v.**                                    Civil No. C-02-192-B
                                        Opinion No. 2002 DNH  201
<u>Philip Morris, Inc.</u>


### <u>MEMORANDUM AND ORDER</u>


Denise Tremblay and Karen Lawrence, both residents of New Hampshire, brought this class action complaint in New Hampshire Superior Court against the defendant, Philip Morris, Inc. The plaintiffs allege that Philip Morris markets and sells "Marlboro Light" and "Marlboro Ultralight" cigarettes (light cigarettes) in violation of the New Hampshire Consumer Protection Act. <u>See</u> N.H. Rev. Stat. Ann. (RSA) ch. 358-A (1995 & Supp. 2001).

According to the complaint, Philip Morris intentionally designs its light cigarettes and manipulates their contents to produce misleading tar and nicotine ratings when measured by the

Cambridge Filter Method, a method for measuring tar and nicotine levels in cigarettes that has been endorsed by the Federal Trade Commission (FTC). Philip Morris allegedly designed its light cigarettes to ensure that users are exposed to smoke with far higher tar and nicotine levels than detected by the Cambridge Filter Method. In other words, the plaintiffs allege that Philip Morris designed its light cigarettes to intentionally exploit the limitations of the Cambridge Filter Method, thereby allowing it to falsely claim in its advertising and marketing materials that its light cigarettes are low in tar and nicotine.[1] This, the plaintiffs allege, amounts to consumer fraud.

Philip Morris removed this case to federal court. It asserts that removal is authorized both by the general removal

---

[1] For instance, Philip Morris allegedly manipulates the smoke pH in light cigarettes in order to create more "free" nicotine in the smoke, thereby enhancing the actual nicotine delivery to smokers beyond that measured by mechanized testing. As for alleged design manipulations, the plaintiffs claim that Philip Morris uses microscopic vents that allow air to mix with the smoke, thus diluting the tar and nicotine. These vents are typically covered up by the consumer's fingers and lips when smoked but remain uncovered when tested by machine. Cf. F.T.C. v. Brown & Williamson Tobacco Corp., 580 F. Supp. 981, 983 (D.D.C. 1983) (discussing use of vents to obtain lower Cambridge Filter Method tar and nicotine results).

statute, 28 U.S.C. § 1441 (1994), because the court has diversity jurisdiction and Philip Morris is not a resident of New Hampshire, and by the federal officer removal statute, 28 U.S.C. § 1442(a)(1) (1994 & Supp. 2002), because Philip Morris is "a person acting under" the direction of an officer of the United States. The plaintiffs move to remand the action to the New Hampshire Superior Court. For the reasons set forth below, I reject Philip Morris's arguments and grant plaintiffs' motion to remand.

## I.  STANDARD OF REVIEW

A defendant seeking to remove a state court action has the burden of demonstrating that the federal court has subject matter jurisdiction. See Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). If there is any doubt as to the right of removal, federal jurisdiction should be rejected and the case resolved in favor of remand. See Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000), cert. denied, 120 S.Ct. 2658 (2000); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("where plaintiff and defendant clash about jurisdiction,

uncertainties are resolved in favor of remand."); <u>Arness v. Boeing North Am., Inc.</u>, 997 F. Supp. 1268, 1271 (C.D.Cal. 1998); <u>see also</u> <u>Danca</u>, 185 F.3d at 4 (stating that "removal statutes are strictly construed").

I apply this standard in ruling on plaintiffs' motion to remand.

## II.  DISCUSSION

### A.  Removal Based on Diversity Jurisdiction

Philip Morris asserts that removal is warranted under § 1441 because the court has diversity jurisdiction and it is not a New Hampshire resident.  The main issue presented by this jurisdictional claim is whether plaintiffs' complaint satisfies the $75,000 amount in controversy requirement of the diversity statute.[2]

---

[2]  The First Circuit has not described the standard of proof that a court should use to determine whether a defendant removing a case based on diversity jurisdiction has met the amount in controversy requirement.  In the majority of circuits that have addressed this question, "courts generally require that a defendant establish the jurisdictional amount by a preponderance of the evidence."  <u>Martin v. Franklin Cap. Corp.</u>, 251 F.3d 1284, 1290 (10th Cir. 2001); <u>see</u> <u>also</u> <u>Nollet v. Palmer</u>, 2002 D.N.H. 136.  I employ this standard in ruling on the plaintiffs' motion to remand.  Further, because Philip Morris has not sought an

-4-

The plaintiffs seek actual damages in the form of either a refund of all sums paid by class members who purchased light cigarettes since 1971, or disgorgement of the profits Philip Morris realized from the sales of such cigarettes to class members.  They also seek treble damages and attorneys' fees, costs, and expenses associated with the suit.  Although the named plaintiffs assert that the damages are each less than $75,000, Philip Morris argues that the actual damages claimed by named class member Karen Lawrence will exceed the jurisdictional threshold if they are trebled as may be permitted by RSA 358-A:10.[3]  Therefore, Philip Morris concludes that I have diversity jurisdiction over her claim and may exercise supplemental jurisdiction over the other class members' claims.  See 28 U.S.C. § 1367 (1993); see also Kanter v. Warner-Lambert Co., 265 F.3d

---

evidentiary hearing, I resolve this issue based upon the parties' submissions.  See Valentin v. Hospital Bella Vista, 254 F.3d 358, 364-65 (1st Cir. 2001).

[3]  Presumably because it deems the issue to have been foreclosed by the Supreme Court's opinions in Snyder v. Harris, 394 U.S. 332, 338 (1969) and Zahn v. Int'l Paper Co., 414 U.S. 291, 301 (1973), Philip Morris does not argue that the amount in controversy requirement can be satisfied by aggregating the damage claims of the entire class.

853, 858 (9th Cir. 2001) (court has supplemental jurisdiction over class claims if named plaintiff's damages exceed jurisdictional amount).

Philip Morris alternatively contends that the amount in controversy requirement can be satisfied by taking into account the attorneys' fees that plaintiffs will recover if they are successful. It makes this claim by first asserting that an award of attorneys' fees in this case would amount to at least $600,000. Next, it contends that the attorneys' fees should be distributed among the named plaintiffs rather than among the entire class. Using this methodology, Philip Morris concludes that "the amount in controversy is easily met." I address each argument in turn.

1. <u>Lawrence's Damages</u>

The complaint alleges that "[t]he plaintiffs' damages are each less than $75,000, as are the economic damages of each individual class member." Phillip Morris nevertheless argues that Lawrence's potential damages slightly exceed this amount because she claims to have smoked "one and one-half to two packs a day of Marlboro light cigarettes in New Hampshire for a period

of approximately 30 years." Phillip Morris construes this assertion to mean that Lawrence smoked an average of two packs of Marlboro Light cigarettes for a full 30 years. It then takes the $1.24 average price for a pack of Marlboro Light cigarettes during the 30-year period and asserts that Lawrence's potential damages when trebled exceed $80,000 (2 [packs per day] x $1.24 [per pack] x 365 [days per year] x 30 [years] x 3 [damages trebled] = $81,468).

I reject Philip Morris's argument because it does not give a fair reading to the complaint as a whole. First, as the above-quoted language reveals, Lawrence claims that she smoked not two packs per day, but an average of one and one-half to two packs per day. The fairest way to read this assertion is to construe it to be a claim that she smoked an average of 1.75 packs per day during the period in question. Second, while Lawrence at one point alleges that she smoked Marlboro Light cigarettes for approximately 30 years, she makes another more precise assertion elsewhere in the complaint that she began smoking Marlboro Light cigarettes in 1973 or 1974 and stopped smoking them in February 2001. This assertion limits her claim to costs she incurred

during a period of no more than 28 years and two months. If these more specific assertions are used in Phillip Morris's equation, Lawrence's damages are below the jurisdictional amount (1.75 [packs per day] x $1.24 [per pack] x 365 [days per year] x 28 [years] x 3 [damages trebled] = $66,532 + 1.75 x $1.24 x 59 [days in 2001] = $66,660). Given Lawrence's express assertion in the complaint that her damages are less than $75,000 and the fact that Philip Morris has failed to come forward with any contrary evidence, I am unpersuaded by its argument that Lawrence's damages could exceed the jurisdictional amount.[4]

2. Attorneys' Fees

Philip Morris also claims that, in addition to her actual damages, Lawrence, if successful, will recover her attorneys' fees and costs. See RSA 358-A:10 (authorizing award of attorney's fees to prevailing plaintiff). According to Philip Morris, "the potential attorneys' fees in this case would amount to at least $600,000." Philip Morris, citing In re Abbot Labs., 51 F.3d 524 (5th Cir. 1995), claims that this amount should be

---

[4] Because plaintiffs have asked me to accept as true their assertions that none of the named plaintiffs have incurred damages in excess of $75,000, they are estopped from arguing otherwise at any later point in this litigation.

split only among the named plaintiffs rather than among all class members. It thus concludes that Lawrence's potential attorneys' fees exceed the amount in controversy requirement.[5] In the alternative, Philip Morris argues that her share of the fees, when added to her potential damages, push her total recovery above the jurisdictional minimum. I reject Philip Morris's argument.

Unlike the statute at issue in In Re Abbott Labs., RSA 358-A:10-a does not require that an award of attorneys fees be made to the named plaintiffs rather than the class as a whole. See id. at 526-27. Accordingly, the statute does not require deviation from the general rule announced by the Supreme Court in Snyder, 394 U.S. at 338 and Zahn, 414 U.S. at 301 that the damages of class members should not be aggregated when determining whether the diversity statute's jurisdictional amount

---

[5] "Normally, attorney's fees are excluded from the amount-in-controversy determination . . . . There are two exceptions to this rule: when the fees are provided for by contract, and when a statute mandates or allows payment of the fees." Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001). Here, the New Hampshire Consumer Protection Act states that "In any action brought under [the Act], the court may order, in addition to actual damages . . . reasonable attorney's fees." RSA 358-A:10-a.

has been satisfied.  <u>Spielman</u>, 251 F.3d at 8-9.  Further, while the New Hampshire Consumer Protection Act provides for an award of attorneys' fees at the <u>discretion</u> of the state trial court, <u>see</u> N.H. Rev. Stat. Ann. § 358-A:10-a, "[t]he possibility of an aggregated award through the exercise of the [state trial] court's discretion does not justify disregarding the anti-aggregation principles of <u>Synder</u> and <u>Zahn</u>."  <u>Spielman</u>, 251 F.3d at 10 (<u>referencing</u> <u>Synder</u>, 394 U.S. at 339-40; <u>Zahn</u>, 414 U.S. at 301); <u>see</u> <u>generally</u>, James Wm. Moore, 15 <u>Moore's Federal Practice</u> § 102.108[4][c] (Matthew Bender's 3d ed.) ("[a]ttorney's fees recoverable in a putative class action may not be aggregated when the purpose of the award under state law is compensatory rather than punitive and the statutory remedies give each individual plaintiff in the class the right to recover attorney's fees.").

Because I reject Philip Morris's aggregation argument, I must also determine whether Lawrence's <u>pro</u> <u>rata</u> share of potential attorneys' fees pushes her damages beyond $75,000. Even if one were to double Philip Morris's estimate regarding attorneys' fees, a class size of merely one thousand members would result in an award of $1,200 for each member.  The probable

-10-

size of the class in this case -- people who smoked light cigarettes during the last three decades -- will more than likely be far larger than one thousand members. Adding Lawrence's potential attorneys' fees -- the generous amount of $1,200 -- to her actual damages, Philip Morris has still failed to demonstrate that Lawrence's damages will exceed $75,000. Therefore, I reject Philip Morris's argument that the removal is authorized by § 1441.

## B.    **Federal Officer Removal**

Philip Morris also argues that removal is proper under § 1442(a)(1), which provides, in pertinent part, that an action may be removed to federal court by "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office. . . ." This provision protects federal officers, federal agencies, and those acting under their direction "against interference in the course of their duties by hostile state courts." Fleet Bank-NH v. Engleiter, 753 F. Supp. 417, 420 (D.N.H. 1991); see also Willingham v. Morgan, 395 U.S. 402, 405 (1969). The provision accomplishes this goal "by

allowing those whose federal activity may be inhibited by state court actions to remove to the presumably less biased forum of federal court." Ryan v. Dow Chemical, 781 F. Supp. 934, 939 (E.D.N.Y. 1992).

Ordinarily, when removal is sought based on the existence of federal question jurisdiction, the "well pleaded complaint" rule requires the court to determine whether removal is warranted by looking only to the face of the plaintiff's well pleaded complaint rather than to the potential existence of a defense based on federal law. See Jefferson County v. Acker, 527 U.S. 423, 431-32 (1999). Section 1442(a)(1) is an exception to the well pleaded complaint rule. See id. It permits the federal law under which the action is deemed to "arise" for purposes of the court's Article III jurisdiction to be supplied by pleading a federal defense in the notice of removal and satisfying the provision's other requirements. See id.; see also Mesa v. California, 489 U.S. 121, 136 (1989).

The primary beneficiaries of § 1442(a)(2) are federal officers and agencies. A private party defendant may also invoke § 1442(a)(2) but to do so it must: (1) assert a colorable defense

based on federal law in the notice of removal; (2) establish that it was acting under the direction of a federal officer when it engaged in the actions on which the plaintiff's claims are based; and (3) demonstrate that a causal nexus exists between its actions and the federal officer's use of his governmental office. See Jefferson County, 527 U.S. at 431 (applying first and third requirements to removal instituted by federal officer); Camacho v. Autoridad de Telefonos de Puerto Rico, 868 F.2d 482, 486-87 (1st Cir. 1989) (applying second and third requirements to removal instituted by private party); see also Moore, 15 Moore's Federal Practice § 107.15[1][b][ii] (noting that all three requirements apply if removal is instituted by a private party). The availability of removal in this case turns on the second of these three requirements.[6]

Philip Morris argues that it was merely attempting to comply with the FTC's policies regarding the testing and labeling of light cigarettes when it engaged in the conduct for which it has

---

[6] Plaintiffs do not challenge Philip Morris's claim that it has a colorable preemption defense. Further, because I determine that Philip Morris was not acting under the direction of federal officers when it engaged in the conduct for which it has been sued, I need not address § 1442(a)(1)'s third requirement.

-13-

been sued.  Thus, it argues that it has satisfied § 1442(a)(1)'s second requirement.  Because this argument is based on both a misunderstanding of FTC's activities in this area and a mischaracterization of the plaintiffs' complaint, I find its assertion unpersuasive.

The FTC began its efforts to regulate the marketing of light cigarettes in 1955 by issuing cigarette advertising guides that banned tobacco companies from representing "that any brand of cigarette or the smoke therefrom is low in nicotine or tars . . . when it has not been established by competent scientific proof . . . that the claim is true."  Cigarette Advertising Guides, 6 Trade Reg. Rptr. (CCH) 39,012 (1995).  The advertising guides responded to complaints from tobacco companies that their rivals were misrepresenting tar and nicotine levels in advertisements.  See National Institutes of Health, U.S. Dep't of Health and Human Servs., Pub. No. 02-5074, Risks Associated with Smoking Cigarettes with Low Machine-Measured Yields of Tar and Nicotine 202 (2001); Cigarette Testing, Request for Public Comment, 62 Fed. Reg. 48,158, 48,158 (Sept. 12, 1997).  Apparently, however, the advertising guides were unsuccessful in curbing the

advertising war or "tar derby" among tobacco companies.  Thus, in 1960, "the tobacco industry through the aegis of the [FTC] decided to halt the 'tar derby'," and agreed to eliminate the tar and nicotine claims in cigarette advertisements.  Tobacco Products and Accessories, 5 Trade Reg. Rptr. (CCH) 11,730 (1988).

In 1966, "to provide a uniform basis for advertising claims," the FTC sought public comment on the adoption of the Cambridge Filter Method as the standard for measuring tar and nicotine levels.  62 Fed. Reg. at 48,158.  A year later, the FTC adopted the Cambridge Filter Method and began a program to test the tar and nicotine levels in every brand of cigarette.  See Cigarettes, Testing for Tar and Nicotine Content, 32 Fed. Reg. 11,107, 11,178 (Aug. 1, 1967); see also Cigarettes and Related Matters, 45 Fed. Reg. 46,483 (July 10, 1980).  The Cambridge Filter Method was specified as the method "to be used to support any factual statements of tar and nicotine content of the mainstream smoke of cigarettes."  Cigarettes and Related Matters, 31 Fed. Reg. 14,105, 14,278 (Nov. 4, 1966); see also 32 Fed. Reg. at 11,178.  The purpose of adopting the Cambridge Filter Method was to "provide smokers seeking to switch to lower tar cigarettes

with a single, standardized measurement with which to choose among the existing brands." 62 Fed. Reg. at 48,158; see also Announcement of Commission Determination, 48 Fed. Reg. 15,953, 15,954 (April 13, 1983) (testing data for comparative purposes only).

Shortly after adopting the Cambridge Filter Method, the FTC initiated formal rulemaking procedures, proposing a trade rule mandating the disclosure of tar and nicotine levels in cigarette advertisements. See Federal Trade Commission, Report to Congress (Dec. 21, 1970). In response, Philip Morris and other tobacco companies voluntarily agreed to disclose tar and nicotine levels as determined by the Cambridge Filter Method. Because the tobacco companies voluntarily agreed to such disclosure, the FTC indefinitely suspended its rulemaking proceeding. See id. at app. c.

This discussion of the FTC's regulatory treatment of light cigarettes demonstrates that the FTC endorsed the use of the Cambridge Filter Method in order to "provide smokers seeking to switch to lower tar cigarettes with a single, standardized measurement with which to choose among the existing brands," not

to direct and control the design or production of low tar cigarettes.  Cf. Ryan, 781 F. Supp. at 950 (direction and control by federal officer concerned marketing rather than design and manufacture).  As for the disclosure of tar and nicotine levels, the FTC's participation in obtaining Philip Morris's agreement to disclose tar and nicotine levels for its products produced by the Cambridge Filter Method does not transform its design, manufacture, or sales practices into actions conducted under the direction of a federal officer or agency.  Although Philip Morris is a participant in a regulated industry, this is not enough to demonstrate that it acted under the direction of a federal officer when it designed its light cigarettes and elected to market them as low in tar and nicotine.  See Bakalis v. Crossland Sav. Bank, 781 F. Supp. 140, 145 (E.D.N.Y. 1991); cf. Brown v. Philip Morris Inc., 250 F.3d 789, 801 (3rd Cir. 2001) (in Bivens action "[t]he mere fact that a tobacco company has complied with the requirements of a federal law cannot suffice to transform it into a federal actor any more than the compliance of a myriad of private enterprises with federal law and administrative regulations could of itself work such a transformation").

Nowhere in the complaint do the plaintiffs challenge the enforcement or wisdom of any FTC policy, procedure or regulation. Further, the complaint does not allege that Philip Morris is liable simply for complying with the Cambridge Filter Method and FTC advertising policies. Rather, it clearly and concisely alleges that Philip Morris engages in a course of conduct aimed at manipulating the FTC's policies by exploiting loopholes in the Cambridge Filter Method. Because the plaintiffs are the masters of their complaint, see Webster v. Reproductive Health Servs., 492 U.S. 490, 512 (1989), Philip Morris's attempted recasting of their claims is irrelevant.

In short, this is not a case where plaintiffs seek to challenge federal policy or official action in a state court forum. Rather, the plaintiffs challenge the conduct of a private corporation, acting without direction from a federal officer or agency. Allowing this action to be litigated in state court will not interfere with the course of the FTC's duties nor its policies regarding the regulation of the cigarette industry.

## IV. CONCLUSION

For the reasons discussed above, I determine that Philip

-18-

Morris fails to demonstrate that removal is warranted under either the general removal statute or the federal officer removal statute. Accordingly, I grant the plaintiffs' motion to remand (Doc. No. 9) pursuant to 28 U.S.C. § 1447(a). Because Philip Morris had a good faith basis for seeking removal, given the complexity of the law in this area, I deny plaintiffs' request (Doc. No. 10) that I exercise my discretion under 28 U.S.C. § 1447(c) to require Philip Morris to bear the costs and attorneys' fees incurred by plaintiffs as a result of removal. See Am. Inmate Phone Sys. v. U.S. Sprint, 787 F. Supp. 852, 859 (N.D. Ill. 1992); Boyle v. MTV Network, Inc., 766 F. Supp. 809, 818 (N.D. Cal. 1991) (both rejecting such requests).[7] This case shall be remanded to the Superior Court of New Hampshire for the County of Hillsborough, Northern District.

My findings and conclusions herein apply with equal force to the consolidated case of Shelby Peters v. Philip Morris, Inc., No. 02-245-M. Therefore, Peters is remanded to the Superior

_____

[7] I am aware of the fact that Philip Morris has unsuccessfully removed under diversity jurisdiction in many other cases. However, the issue here involves an analysis of factual allegations specific to this case. Further, it appears that this is the first time that Philip Morris has advanced an argument for removal based upon the federal officer removal statute.

Court of New Hampshire for the County of Rockingham, where it was originally filed.

    SO ORDERED.


                           _____
                           Paul Barbadoro
                           Chief Judge


November 8, 2002

cc:  John Vetne, Esq.
     Douglas Steere, Esq.
     Charles Douglas, Esq.