Evelyn J. **PARKS** and Michael Parks, Plaintiffs,

v.

**GUIDANT CORPORATION, Guidant Sales Corporation, Guidant Holdings, Inc., Defendants.**

No. 2:05 CV 042 PS.

United States District Court, N.D. Indiana, Hammond Division.

Nov. 21, 2005.

Kenneth J. Allen, William James Lazarus, Kenneth J. Allen and Associates PC, Valparaiso, IN, for Plaintiffs.

Alison G. Fox, Baker & Daniels, South Bend, IN, Thomas G. Stayton, Baker & Daniels, Indianapolis, IN, for Defendants.

## OPINION AND ORDER

SIMON, District Judge.

Plaintiffs filed this products liability case in Indiana state court and Defendants removed it under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Before the Court is Plaintiffs' Motion for Remand. [Doc. 15.] Our jurisdiction hinges on whether Defendants acted under the direction of a federal agency and whether Defendants' removal was timely. For the reasons set forth below, Plaintiffs' motion is GRANTED with each party to bear its own attorneys' fees.[1]

---

1. At the outset, the Court apologizes to the parties for the delay in rendering this opinion.

The Court strives to rule on motions in a

## BACKGROUND

The claims in this case arise out of the alleged malfunction of a medical device designed, manufactured, and sold by one or more Defendant. Plaintiffs allege that a defibrillator worn by Plaintiff Evelyn Parks malfunctioned, shocked her more than 40 times, and sent her into an extended coma. On December 22, 2004, Plaintiffs filed suit in state court in Lake County, Indiana. The Complaint named Guidant Corporation, Guidant Sales Corporation, and Guidant Holdings, Inc. as defendants.[2]

On February 3, 2005, Defendants Cardiac Pacemakers, Inc. and Guidant Sales Corporation removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1), the "federal officer" removal statute. Defendants do not assert any other basis for federal jurisdiction. Plaintiffs are Washington residents but filed suit in Defendants' home state of Indiana. Thus, Defendants could not remove the case on diversity grounds. *See* 28 U.S.C. § 1441(b). On March 4, 2005, Plaintiffs moved to remand the case to Indiana state court. Plaintiffs contend that removal is improper because: 1) the federal officer removal statute does not apply to this case; and 2) Defendants' removal was untimely. Plaintiffs also seek to recover attorneys' fees associated with their Motion for Remand under 28 U.S.C. § 1447(c). Because we find that the federal officer removal statute does not apply here, we do not address the timeliness of the removal.

## DISCUSSION

■ A defendant seeking removal bears the burden of establishing federal subject matter jurisdiction. *Disher v. Citigroup Global Markets Inc.,* 419 F.3d 649, 654 (7th Cir.2005). Federal removal jurisdiction is statutory in nature and is to be strictly construed. *See Shamrock Oil & Gas v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Removal is proper if it is based on statutory permissible grounds and if it is timely. *Boyd v. Phoenix Funding Corp.,* 366 F.3d 524, 529 (7th Cir.2004). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (quoting *Louisville and Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1914)). This general rule, known as the well-pleaded complaint rule, has two exceptions: 1) when Congress expressly provides otherwise; or 2) when a federal statute completely preempts the state-law cause of action. *Id.* Because Defendants do not allege complete preemption as a basis for removal [Doc. 23–1 at 9, n. 6.], only the first exception is at issue here.

■ In 28 U.S.C. § 1442(a), Congress expressly provided for the removal of cases brought against federal officers when the subject matter of the case involves action taken by federal officials under color of their office. The purpose behind the federal officer removal statute

---

reasonably prompt manner and acknowledges that it did not do so in this instance.

**2.** Defendants contend that neither Guidant Corporation nor Guidant Holdings, Inc. played any role in the design, manufacture, distribution and/or sale of the device in question and, therefore, they were improperly named as defendants. Defendants assert that

Cardiac Pacemakers, Inc. ("CPI"), a wholly-owned subsidiary of Guidant Corporation, designed and manufactured the medical device at issue and, therefore, CPI is the proper defendant. Defendants' opposition to the remand motion is on behalf of CPI and Guidant Sales Corporation.

is to prevent state courts from exercising jurisdiction over federal officials when their actions are authorized by the federal authority they possess. *Willingham v. Morgan,* 395 U.S. 402, 406, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *see also Mesa v. California,* 489 U.S. 121, 126, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). If federal officials could not remove such cases to federal court, states could effectively thwart federal action and disrupt the operation of the federal government. *Id.* § 1442(a) should not be read in a narrow or limited manner, nor should its purpose be frustrated by a narrow, grudging interpretation. *Id.* at 405–07.

Although the primary beneficiaries of § 1442(a) are federal officers and agencies, a private party may also invoke the statute. *Venezia v. Robinson,* 16 F.3d 209, 211–12 (7th Cir.1994). This is because the statute contains a parenthetical reference that makes it applicable not only to federal officers but also to "(any person acting under that officer)..." 28 U.S.C. § 1442(a). The paradigm for removal by a nonfederal official is demonstrated by *Venezia.* In that case, an individual named Robinson acting under the authority of the FBI participated in a sting operation trying to ferret out people who were paying bribes to protect illegal poker machines. Robinson was hauled into state court in Illinois and had an injunction slapped on him. The case was removed to federal court under the federal officer removal statute because although Robinson was not a federal official himself he was "acting under" a federal official—the FBI agent with whom he was taking direction—and removal was therefore proper.

■ To remove a case to federal court under § 1442(a)(1), a private party must: (1) have acted under the direction of a federal agency or officer; (2) raise a color-

able federal defense; and (3) demonstrate a causal nexus between the federal direction and the conduct in question. *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,* 342 F.Supp.2d 147, 154 (S.D.N.Y.2004) (citations omitted); *see also Jewel v. Unum-Provident Corp.,* 352 F.Supp.2d 122, 127 (D.Mass.2005).

■ To say the least, and for better or worse, we live in a highly regulated country. But mere participation in a regulated industry does not establish that a party is acting under the direction of a federal officer. *In re MTBE Products Liability Litigation,* 342 F.Supp.2d at 156; *Virden v. Altria Group, Inc.,* 304 F.Supp.2d 832, 845–46 (N.D.W.Va.2004); *Tremblay v. Philip Morris, Inc.,* 231 F.Supp.2d 411, 417 (D.N.H.2002). Rather, a defendant seeking to remove pursuant to § 1442(a) must provide "candid, specific and positive" allegations that the conduct complained of was undertaken pursuant to the directions of a federal office or agency. *Willingham,* 395 U.S. at 409, 89 S.Ct. 1813; *see also Colorado v. Symes,* 286 U.S. 510, 518–19, 52 S.Ct. 635, 76 L.Ed. 1253 (1932). In other words, the acts that form the basis of the state court suit must have been performed "pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Virden,* 304 F.Supp.2d at 844. Thus, absent a showing that the complained of conduct is closely linked to detailed and specific regulations, a defendant will be unable to meet the first prong for private party removal—that the private party was acting under the direction of a federal officer. *Virden,* 304 F.Supp.2d at 845–46; *Tremblay,* 231 F.Supp.2d at 417.

According to Plaintiffs, federal officer removal does not apply here because Defendants cannot satisfy the first element for removal—that Defendants were "acting under" an officer of the United States.

Defendants contend they satisfy the first element because they acted under the direction of the Food and Drug Administration, but this a far cry from the paradigm set forth in *Venezia.*

It is of course true that the FDA has comprehensive regulatory authority over the production of medical devices. Indeed, the device at issue in this case is a "Class III" medical device and, as such, is subject to rigorous and comprehensive FDA regulations. Defendants are required to submit a Premarket Approval Application that contains detailed information about the safety and efficacy of the device. After approval, the FDA requires Defendants to maintain certain records and to report any adverse events. Defendants contend that in adhering to the FDA's regulations, they have worked under the "meticulous supervision and direction of the FDA" and its officials. Therefore, Defendants submit, they satisfy the first element for removal. [Doc. 23–1 at 11–13.]

■ This analysis stretches the federal officer removal statute to its breaking point. While the FDA's regulation of class III medical devices may be rigorous, Defendants have not pointed to anything in the regulations to establish that Defendants acted under the direction of the FDA in the design, manufacture, or sale of the device at issue. The FDA does not tell Defendants how to act. The FDA does not direct Defendants how to design or manufacture the device at issue. The FDA simply requires manufacturers to provide "reasonable assurance" that the device is "safe and effective." 21 U.S.C. § 360c(a)(1)(C); 21 C.F.R. § 860.7. Absent detailed instruction or direction from the FDA, this is not enough to satisfy the first element.

Defendants stress that FDA regulations prohibit Defendants from making any changes to a device that impact its safety and effectiveness without first obtaining FDA consent. Defendants argue that once a device is approved, the specifications set forth in the PMA become "federal requirements from which the manufacturer cannot deviate." [Doc. 23–1 at 13.] The Court is not persuaded. Obviously, the FDA does not want medical device manufacturers altering an already-approved device without first running the changes by the FDA. But this post-approval requirement does not mean that the manufacturers are "acting under" the direction of the FDA, as that phrase is used in the federal officer removal statute. 28 U.S.C. § 1442(a)(1).

Were the Court to find this case sufficient to invoke the federal officer removal statute, then there would be little to stop every medical device manufacturer—indeed, every drug manufacturer—sued in state court, and who cannot avail itself of diversity jurisdiction, from removing any garden-variety, products liability case to federal court. This would lead to an unprecedented expansion of federal jurisdiction. A plain reading of § 1442(a) does not support this construction, and we do not think this is what Congress had in mind when it enacted that statute. As the *Tremblay* court noted:

> "[T]his is not a case where plaintiffs seek to challenge federal policy or official action in a state court forum. Rather, the plaintiffs challenge the conduct of a private corporation, acting without direction from a federal officer or agency. Allowing this action to be litigated in state court will not interfere with the course of the [agency's] duties nor its policies regarding the regulation of the [ ] industry."

231 F.Supp.2d at 419.

*Little v. Purdue Pharma, L.P.,* 227 F.Supp.2d 838 (S.D.Ohio 2002) is instruc-

tive. In *Little*, the plaintiffs filed suit in state court against drug manufacturers for personal injuries allegedly arising from the use of the prescription drug Oxycontin. The drug manufacturers removed the case on several grounds, including the federal officer removal statute. The drug manufacturers argued that they qualified for federal officer removal because—much like this case—they were subject to "complex regulations, guidelines and evaluation schemes." *Id.* at 860. The district court rejected this argument and granted plaintiffs' remand motion, finding that "drug manufacturers do not take governmental orders (or follow commands)." *Id.* at 861. The *Little* court noted that although "their acts must conform to federal regulations," drug manufacturers were under "no duty, or direction, to act." *Id.* Plaintiffs here are similar to the drug manufacturers in *Little*. Both are subject to rigorous regulation by the FDA. Both must adhere to the regulations in order to do business. Yet, looking at the conduct giving rise to claims against them, neither was required or directed to act in a particular way by the FDA.

Defendants rely heavily on *Watson v. Philip Morris Companies, Inc.*, No. 4:03–CV–519 GTE, 2003 WL 23272484 (E.D.Ark. Dec. 12, 2003), which refused to remand a case involving false advertising claims against tobacco companies. As a threshold matter, Plaintiffs correctly point out that *Watson* stands alone among several cases involving virtually the same issue and the same tobacco company defendants. In the following cases, the district court *granted* motions to remand in circumstances virtually identical to those present in *Watson*. *See Virden v. Altria Group, Inc.*, 304 F.Supp.2d 832, 845–46 (N.D.W.Va.2004); *Paldrmic v. Altria Corporate Services, Inc.*, 327 F.Supp.2d 959, 966 (E.D.Wis.2004); *Pearson v. Philip Morris*, No. 03–CV–178–HA, 2003 U.S.

Dist. LEXIS 24508 (D.Or. Aug.8, 2003); *Tremblay*, 231 F.Supp.2d at 417.

Nevertheless, even if *Watson* is correctly decided, the tobacco companies have a better case for federal officer removal than Defendants do here. In *Watson*, consumers sued a cigarette manufacturer and related entities for deceptively marketing certain "light" or "low tar" cigarettes in violation of an Arkansas consumer protection statute. The Federal Trade Commission regulates tobacco advertising. According to the *Watson* court, "[t]he FTC and cigarette manufacturers, including [the defendant], have a forty year history of specific, detailed, and unusual regulation of cigarette testing and advertising." *Id.* at *16. Not only did the FTC develop a method of testing tar levels in cigarettes but, in the 1970s, the FTC took the "unusual and unprecedented" step of conducting cigarette testing itself for approximately twenty years. *Id.* at *13. The FTC requires disclosure of tar and nicotine ratings in cigarette advertisements and permits manufacturers to advertise their cigarettes as "light" or "low tar" if the cigarettes meet the FTC's standard. *Id.* at *15.

The plaintiffs in *Watson* filed suit in Arkansas state court. The defendants removed pursuant to § 1442(a)(1). The plaintiffs moved to remand, contending, among other things, that the defendants were not "acting under the direction" of the FTC as required under § 1442(a). The district court denied the motion and found that the tobacco companies properly invoked federal officer jurisdiction under § 1442(a).

The tobacco companies in *Watson* were on a different footing than Defendants here. First, the FTC's regulation of cigarette testing and advertising has been ex-

traordinary and "unprecedented." As the Eighth Circuit noted in affirming *Watson:*

> The FTC involved itself in the tobacco industry to an unprecedented extent. Throughout the record, there were several indications that both developing a testing method and carrying out the testing evidenced an unusually high level of governmental participation and control. Deputy Director of the Bureau of Consumer Protection of the FTC, C. Lee Peeler, could not recall any other instance where the FTC had gone so far as to specify the testing methodology. To actually conduct the testing itself for over twenty years, instead of delegating that task to the industry, was outside the government's normal course of conduct. The operation of a cigarette lab by the FTC was "really something that was unique" and "unusual for ... the Commission."

*Watson v. Philip Morris Cos., Inc.,* 420 F.3d 852, 860 (8th Cir.2005).[3] Plaintiffs here have not alleged the same "unprecedented" involvement by the FDA in the manufacture, design, or sale of medical devices. Moreover, the FTC's mandates regarding testing and advertising related directly to the core of the plaintiffs' case— whether advertising cigarettes as "Lights," when their tar value was less than 15 mg under the FTC's method of testing, is deceptive. *Id.* at *16.

Here, the FDA's regulation of medical devices does not "cut to the heart of Plaintiffs' claims" to the same degree that the FTC's regulation of low-tar cigarettes did in *Watson. Id.* at *14. The connection between the FDA's regulation and Plaintiffs' claims is more attenuated. Plaintiffs allege that they were injured when Defendants' device malfunctioned and shocked Evelyn Parks several times. Unlike the tobacco companies in *Watson,* Defendants point to nothing that links FDA regulation or involvement with the cause of the alleged malfunction. At most, Defendants can say generally that the product's design and manufacturing specifications reasonably assured the FDA that the product was safe and effective. We believe § 1442(a) requires more.

*In re MTBE Products Liability Litigation,* 342 F.Supp.2d 147 (S.D.N.Y.2004) also warrants discussion. In *MTBE,* a consolidated multi-district litigation, various plaintiffs including states, cities, and municipalities, sued various oil companies alleging that they contaminated groundwater by using an oxygenate compound called methyl tertiary butyl ether (MTBE) to produce gasoline. MTBE is a known animal carcinogen and has been linked to potential human health problems. In 1990, Congress passed a law creating two programs that required oil companies to blend oxygenates into gasoline sold throughout the country. In 1991, the Environmental Protection Agency approved the use of seven oxygenates, including MTBE. Defendants alleged that both Congress and the EPA knew that the only way oil companies could comply with the new standards was to use MTBE. Thus, Congress and the EPA effectively directed defendants to use, manufacture, and/or sell gasoline that contained MTBE. *Id.* at 151.

The various MTBE plaintiffs filed suit in state court. The oil companies removed the cases on various grounds, including federal officer jurisdiction. In denying the plaintiffs' remand motion, the district court found that it had federal officer jurisdiction and that the defendants sufficiently

---

**3.** The Eighth Circuit affirmed the district court's decision in *Watson* after the parties here finished briefing Plaintiffs' remand motion. *See Watson v. Philip Morris Cos., Inc.,* 420 F.3d 852, 857 (8th Cir.2005).

alleged that they added MTBE to gasoline at the EPA's direction. The court explained that federal officer removal "is premised not on defendants' participation in a regulated industry, but rather the fact that defendants took actions at the express direction of the federal government, and those actions form the basis for the complaints." *Id.* at 156.

Unlike the oil companies in *MTBE*, Defendants here cannot point to any federal law or regulation that directed them to take action which formed the basis of Plaintiffs' complaint. Defendants have not alleged that the FDA effectively directed them to design, manufacture or sell the device at issue in a manner that gave rise to the claims in this case. At most, Defendants have laid out a rigorous regulation scheme that requires them to jump through many hoops to obtain and maintain product approval from the FDA. We find that this is not enough to establish that Defendants were acting under the direction of the FDA when they allegedly engaged in the conduct giving rise to this lawsuit. Because Defendants cannot satisfy all of the elements of § 1442(a), we lack subject matter jurisdiction over this case regardless whether the removal was timely.

Finally, we decline to award Plaintiffs attorneys' fees under 28 U.S.C. § 1447(c). The district court has a broad discretion in deciding whether to award fees under § 1447(c). *See Sirotzky v. New York Stock Exchange,* 347 F.3d 985, 987 (7th Cir.2003). In this circuit, plaintiffs who prevail on a remand motion are presumptively entitled to attorneys' fees. *Id.* The presumption, of course, is rebuttable. *Id.* While we ultimately disagree with Defendants about the propriety of removal, Defendants marshaled at least some authority to support their decision to remove. The *Watson* case, on which Defendants relied most, gave Defendants a colorable (although ultimately unsuccessful) basis for removal. The fact that the Eighth Circuit later affirmed *Watson* also cuts against any award of fees. *See Watson,* 420 F.3d at 860. After carefully analyzing the basis for removal and the briefing submitted by the parties, the Court finds that an award of fees is not warranted under § 1447(c).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Remand [Doc. 15] is **GRANTED** and this case is **REMANDED** to Lake Circuit Court for all further proceedings. Plaintiffs' request for attorneys' fees under 28 U.S.C. § 1447(c) is **DENIED**. Plaintiffs' Motion for Status on Motion To Remand [Doc. 30] is **DENIED** as moot. The clerk shall treat this civil action as **TERMINATED** and all further settings in this action are hereby **VACATED**.

**SO ORDERED.**